**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ronald Brooks TIPPETT, Defendant,**

and

**Edgar Lee Durre, Movant–Appellant.**

**No. 91–1264.**

United States Court of Appeals, Tenth Circuit.

Sept. 15, 1992.

Edgar Lee Durre, pro se.

Michael J. Norton, U.S. Atty., George E. Gill, Asst. U.S. Atty., Denver, Colo., for plaintiff-appellee.

Before LOGAN, BARRETT, and EBEL, Circuit Judges.

LOGAN, Circuit Judge.

Movant–Appellant Edgar Lee Durre appeals the denial of his application to be paid a witness fee. The success of his claim turns on whether the parties to appeals that are administratively consolidated in this court are deemed parties to each oth-

ers' cases in this court and/or on review in the United States Supreme Court.[1]

I

While Durre was incarcerated in a Colorado state penitentiary, he was subpoenaed and testified as a fact witness during the criminal trial of a third party in the federal district court. At the same trial, three other Colorado state prisoners were subpoenaed and testified. Three of these prisoner witnesses, including Durre, submitted separate motions for witness fees to the district court, pursuant to 28 U.S.C. § 1821. The court denied them by minute orders. The fourth prisoner witness, Demarest, filed a Petition for Review of Acts and Omissions of Clerks of the District Court or, in the Alternative, Complaint for Relief in the Nature of Mandamus. A different district judge denied Demarest's petition. *Demarest v. Manspeaker*, No. 88–F–843, Order (D.Colo. June 10, 1988). Each of the four prisoner witnesses filed separate appeals to this court. We consolidated the four appeals [2] in one opinion with separate captions and separate docket numbers for the four cases. *Demarest v. Manspeaker*, 884 F.2d 1343 (10th Cir.1989), *rev'd*, — U.S. ——, 111 S.Ct. 599, 112 L.Ed.2d 608

(1991). We affirmed the orders of the district court denying the appellants' respective motions for witness fees. Two of the prisoner witnesses submitted petitions for rehearing, which were separately denied. Durre did not submit a petition for rehearing.

Only one of the four appellants, Demarest, filed a petition for certiorari with the United States Supreme Court. Durre did not file a petition for certiorari, nor did he join in Demarest's petition.[3] The Supreme Court reversed our decision, holding that § 1821 was unambiguous and did not except prisoners from entitlement to witness fees. *Demarest v. Manspeaker*, 498 U.S. 184, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991). On remand, we recalled the mandate, vacated the earlier judgment, and remanded the matter to the district court for further proceedings in accordance with the Supreme Court's ruling, in an order captioned only with Demarest's caption and docket number. *Demarest v. Manspeaker*, 930 F.2d 33 (Table), No. 88–1899 (10th Cir. Feb. 22, 1991).

Congress reacted swiftly to the Supreme Court's *Demarest* decision in a rider to emergency supplemental appropriations legislation (Act).[4] The Act prohibits prison-

---

**1.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9(c). The case is therefore ordered submitted without oral argument.

The United States submitted an appellee's brief in this case on March 30, 1992, and then, on April 7, 1992, submitted a second brief in which the government took the opposite position than it had in its first brief. We granted its motion to withdraw the first brief. A few weeks later, Durre submitted a "Motion to Remand 'Appellee's Brief' Dated April 7, 1992." We deny Durre's motion, which we interpret as a motion to strike the government's second brief.

**2.** The consolidation of these pro se appeals, decided on the briefs and involving exactly the same legal issue, was for administrative convenience. Durre and appellant Ronald Reece submitted a joint motion for consolidation of their appeals for the purpose of appointment of counsel for common oral argument. This motion was denied. *United States v. Tippett*, Edgar Lee Durre and Ronald Lee Reece, Movants–Appellants, Nos. 88–1972, 88–1973, Order (10th Cir.

Aug. 30, 1988). Appellant Reece, acting alone, submitted another motion to consolidate, this time requesting consolidation with all three other appellants because all four appeals dealt with the same issue. Although there was no order entered specifically granting this motion, the *Demarest* opinion begins: "The issue presented in these consolidated appeals is...." *Demarest v. Manspeaker*, 884 F.2d 1343, 1344 (10th Cir. 1989), *rev'd*, 498 U.S. 184, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991).

**3.** None of the materials from the Supreme Court in Demarest's Tenth Circuit Court of Appeals file refer to or acknowledge Durre's Tenth Circuit case in any way.

**4.** The Act, which Congress named the "Dire Emergency Supplemental Appropriations for Consequences of Operation Desert Shield/Desert Storm, Food Stamps, Unemployment Compensation Administration, Veterans Compensation and Pensions, and Other Urgent Needs Act of 1991," provides that:

Notwithstanding 28 U.S.C. 1821, no funds appropriated to the Department of Justice in fiscal year 1991 or any prior fiscal year shall

ers from receiving witness fees under § 1821. The Act, however, specifically excepts the "fact witness fee decided in [*Demarest* ]" from this prohibition.

Relying upon the Supreme Court's *Demarest* opinion, Durre submitted a second motion to the district court requesting § 1821 witness fees. The district court denied this second request, stating that the exception described in the Act did not apply to Durre. It noted that Durre "did not pursue his case in the Supreme Court. . . . [Durre's] case was not a component of the Supreme Court's decision in *Demarest*, and, therefore the Congressionally created exception does not apply." I R. tab 6 at 2. The district court held that because he had not appealed the decision against him in this court to the Supreme Court, this court's holding controlled the disposition of Durre's renewed request for witness fees under the principles of res judicata and law of the case. In the instant appeal, Durre claims error in this denial of his renewed motion for witness fees.

To decide whether Durre's renewed motion for witness fees should be granted under the cloak of the Supreme Court's opinion in *Demarest*, it is necessary to establish whether Durre was a party to Demarest's case in this court as a procedural effect of administrative consolidation and whether the "party" status recognized by Supreme Court Rule 12.4 is such as to render the specific exception in the Act—allowing "the fact witness fee decided in [*Demarest* ]"—applicable to Durre's claim for fees.

## II

■ Whether consolidation of separate appeals, with one opinion filed under separate captions and docket numbers, transforms all of the appellants into "parties" of each others' cases, is a matter of first impression in this circuit.

Federal Rule of Appellate Procedure 3(b) provides:

**Joint or Consolidated Appeals.** If two or more persons are entitled to appeal from a judgment or order of a district court and their interests are such as to make joinder practicable, they may file a joint notice of appeal, or may join in appeal after filing separate timely notices of appeal, and they may thereafter proceed on appeal as a single appellant. Appeals may be consolidated by order of the court of appeals upon its own motion or upon motion of a party, or by stipulation of the parties to the several appeals.

Our local rules offer no guidance as to the procedural effects of case consolidation at the appeals court level relevant to the issue before us.

Although there is a dearth of guidance about the effects of consolidation in the federal appeals court, consolidation in the federal district court is analogous and relevant, *see* Fed.R.Civ.P. 42(a),[5] and legal authority interpreting the effect of Rule 42(a) is more plentiful. The Supreme Court considered the effects of district court consolidation in *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 53 S.Ct. 721, 77 L.Ed. 1331 (1933). There, the Court held that "consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Id.* at 496–97, 53 S.Ct. at 727–28.

be obligated or expended to pay a fact witness fee to a person who is incarcerated testifying as a fact witness in a court of the United States, as defined in paragraph (a)(2) of section 1821, 28 United States Code: *Provided,* That the one exception to the preceding prohibition is the fact witness fee decided in United States Supreme Court case No. 89–5916, Richard Demarest, Petitioner v. James Manspeaker et al. on January 8, 1991.
Pub.L. No. 102–27, Title II § 102, 105 Stat. 130, 136 (1991), *reprinted in* 28 U.S.C. § 1821 note.

5. Fed.R.Civ.P. 42(a) provides:

**Consolidation.** When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Despite *Johnson*, which antedates the federal rules of civil and appellate procedure, other circuit courts of appeal have wrestled with the problem of cases consolidated in the district courts principally in the context of when there is a final appealable judgment. The Sixth Circuit has retained a bright-line approach holding that separate notices of appeal must be filed to give the appeals court jurisdiction over consolidated cases. *See Stacey v. Charles J. Rogers, Inc.*, 756 F.2d 440, 442 (6th Cir. 1985) (timely motion for new trial by party to one case does not extend time to file appeal for party to another case in the consolidated trial). *But see Advey v. Celotex Corp.*, 962 F.2d 1177 (6th Cir.1992) (divided panel treating consolidated cases as merged in the context of examining appellate jurisdiction in the face of a Rule 59 motion by a defendant of one of the consolidated cases).

The Seventh and Eighth Circuits have held that they must identify retention of separate case status or merger of identities on a case-by-case basis. *See Mendel v. Production Credit Ass'n*, 862 F.2d 180, 182 (8th Cir.1988) ("We are satisfied ... that technical consolidation into a single action did not occur, but rather an arrangement for joint proceedings and hearings, for convenience."); *Soo Line R.R. Co. v. Escanaba & Lake Superior R.R. Co.*, 840 F.2d 546 (7th Cir.1988):

> Have [the cases] been consolidated just to hold convenient hearings, or have they been merged? The question is important because appellate jurisdiction depends on the finality of the judgment, and a disposition might be final with respect to one case but not the other. If the cases have been merged for all purposes, any open question prevents an appeal in the absence of findings under Rule 54(b); if the cases retain separate identities, appellate jurisdiction depends only on the finality of the disposition of each separate case.

*Id.* at 548; *see also Ivanov–McPhee v. Washington Nat'l Ins. Co.*, 719 F.2d 927, 930 (7th Cir.1983) (to determine extent of consolidation, court looks to evidence of whether consolidation was for limited purpose and whether litigant's interests will be seriously undermined by treating consolidation as merger).

The Fifth Circuit treats consolidated cases as separate when determining whether the district court had jurisdiction to entertain the suits. *E.g., Kuehne & Nagel (AG & CO) v. Geosource, Inc.*, 874 F.2d 283, 287 (5th Cir.1989) ("[W]e must view each consolidated case separately to determine the jurisdictional premise upon which each stands."); *McKenzie v. United States*, 678 F.2d 571, 574 (5th Cir.1982) ("[C]onsolidation does not cause one civil action to emerge from two; the actions do not lose their separate identity; the parties to one action do not become parties to the other."); *see also EEOC v. West La. Health Servs., Inc.*, 959 F.2d 1277, 1280 (5th Cir. 1992) (consent to trial by magistrate judge). We assume all circuits would hold similarly that no suit filed independently could escape the jurisdiction requirements of federal question or diversity because it was consolidated with another after filing.

The Fifth Circuit otherwise appears to follow the case by case approach of the Seventh and Eighth Circuits when considering finality issues. *See id.* at 1280 ("We have recognized that, although consolidation does not eliminate the independent existence of the actions, where the claims have been treated as one throughout the trial, they may be treated similarly for purposes of the notice of appeal."); *Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 746 F.2d 278, 281 (5th Cir.1984) (dismissing appeal under Fed.R.App.P. 4(a)(4) on basis of later-filed motion to amend judgment by one defendant in multiparty consolidated case because "the district court, all parties, and the district clerk treated the five consolidated actions as a single, combined suit"), *aff'd*, 784 F.2d 665 (5th Cir.) (en banc), *cert. denied*, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986); *Ringwald v. Harris*, 675 F.2d 768 (5th Cir. 1982):

> While a consolidation may not in every respect merge separate actions into a single suit, we see no reason why a proper consolidation may not cause otherwise separate actions to thenceforth be treat-

ed as a single judicial unit for purposes of Rule 54(b) when the consolidation is clearly unlimited and the actions could originally have been brought as a single suit.

*Id.* at 771.

■ The circuit opinions requiring inquiry on a case-specific basis to determine the effect of consolidation are correct, we believe. But while that conclusion informs, it does not decide the appeal before us. Here there was only one case before the district court, the federal criminal case in which the prisoner witnesses were called to testify. Thus, there was no consolidated case before the district court and these prisoners were not parties. Yet these individual nonparties had claims of their own in that case for their fees as witnesses. Although each claim involved a common issue of law—whether prisoner witnesses were entitled to the same fees as nonprisoner witnesses—the right was individual and the amounts might differ depending upon the time each witness was required to attend the trial. Even though they were nonparties, when denied the fee, each witness had standing to appeal. *See Dietrich Corp. v. King Resources Co.,* 596 F.2d 422, 424 (10th Cir.1979) (nonparty attorney can appeal order limiting his compensation).

The district court treated the witness fee requests separately; indeed, Demarest's request was denied by a different judge. The prisoner witnesses filed separate appeals to this court; each was required to do so, or to explicitly join in another's notice, to preserve their individual rights to appellate review. *See Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 314, 108 S.Ct. 2405, 2407, 101 L.Ed.2d 285 (1988). There is nothing in the district court's handling of the witness fee issue that would either require or indicate that the four appeals should be treated as one in this appellate court.

Federal Rule of Appellate Procedure 3(b) states that if two or more persons are entitled to appeal from "a judgment or order," and joinder is "practicable" they may file joint or separate notices of appeal, and "thereafter proceed on appeal as a single appellant." Perhaps important rights should not turn on whether the district court disposed of four motions for witness fees in separate orders or one, nor whether after properly appealing appellants filed four briefs instead of one joint brief. But a literal reading of the rule appears to make these distinctions significant.

Also, there appears no good reason to hold that separate appeals, separately briefed, disposed of without oral argument in a single opinion by this court—because they involved a common question of law— become a single case. Careful examination of the court documents submitted by the four appellants indicates that neither the appellants nor this court evidenced an understanding that the four separate appeals had merged into one. The opinion issued by this court structurally treated the consolidated cases as four separate appeals through the use of four separate captions. Four separate judgments were filed, each bearing only the caption and docket number of its respective appeal. Only two of the four appellants, Demarest and Reece, submitted petitions for rehearing, and those two appellants submitted separate petitions. Demarest's petition for rehearing did not refer to the other appeals with which his case had been consolidated except in the repetition of the four-block caption and in the certificate of mailing. The other appellants with whom Demarest's appeal had been consolidated did not join his petition for certiorari to the Supreme Court, nor did they submit their own notices of appeal or petitions for certiorari. In response to the Supreme Court's decision in *Demarest,* this court's order to withdraw the mandate, vacate the judgment, and reverse and remand to the district court was captioned only for Demarest's case, and included no reference to the cases with which it had been consolidated. Thus, it is clear the appellants did not proceed "as a single appellant," Fed. R.App.P. 3(b), either before or after the opinion and the four judgments were entered in this court, nor did this court treat the appellants as parties to a single appeal. We hold that the appeals were not merged

by virtue of their consolidation, and Durre was not a party to Demarest's appeal in this circuit court.

### III

■ We still must determine whether Durre was a party to Demarest's case in the United States Supreme Court. At first glance, Supreme Court Rule 12.4 appears to lend support to Durre's contention that he was indeed a party to that appeal. The rule provides, in pertinent part, that "[a]ll parties to the proceeding in the court whose judgment is sought to be reviewed shall be deemed parties in this Court unless the petitioner notifies the Clerk of this Court in writing of the petitioner's belief that one or more of the parties below has no interest in the outcome of the petition." Sup.Ct.R. 12.4. Durre argues that because both his appeal and Demarest's in this court were consolidated and decided by a single opinion, he was a party to the proceeding being reviewed, and thus entitled to the benefit of the exception for Demarest's case in the Act. This argument does not survive our holding above unless the Supreme Court has a different concept of the term "party" than we do. We see no indication that it does.

Indeed, the Supreme Court rules antici-pate the situation faced by Durre and pro-vide a mechanism whereby he could have become a party to a petition for certiorari without filing separately: "When two or more cases are sought to be reviewed on a writ of certiorari to the same court and involve identical or closely related ques-tions, a single petition for a writ of certio-rari covering all the cases will suffice." Sup.Ct.R. 12.2. But all parties "interested jointly, severally, or otherwise" must join in a petition, and "[a] party who is not shown on the petition for a writ of certiora-ri to have joined therein at the time the petition is filed with the Clerk may not thereafter join in that petition." *Id.* Thus, even if Durre is a "party" within the con-templation of Rule 12.2 his name had to be on the petition filed by Demarest to have his case reviewed by the Supreme Court;

because it was not, he was not a party to Demarest's case in the Supreme Court.

The judgment reviewed by the Supreme Court in *Demarest* was No. 88–1899, De-marest v. Manspeaker et al. The only par-ties to that case were Richard Demarest, James Manspeaker, and "Cathy," an indi-vidual named as a defendant but whose last name was not known to Demarest. Consequently, as defined by Rule 12.4, those persons were the only parties to the Supreme Court proceeding, and its disposi-tion had no effect on Durre's case.

■ Although the Supreme Court's rul-ing in *Demarest* reversed this court's deci-sion on the merits of whether § 1821 grant-ed witness fees to prisoners, the finality of this court's decision denying Durre's re-quest for witness fees was not affected by the Supreme Court's decision. *See Feder-ated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981) ("[T]he res judicata conse-quences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."); *id.* at 399 n. 4, 101 S.Ct. at 2428, n. 4. ("[A]n adverse judgment from which no appeal has been taken is res judicata and bars any future action on the same claim, even if an author-itative contrary judicial decision on the le-gal issues involved is subsequently ren-dered in another case."). Our denial of Durre's witness fees, though wrongly de-cided under the later Supreme Court rul-ing, became final forty-five days after the entry of judgment. Tenth Cir.R. 40.3. Thus, the district court properly held Durre's second claim for fees was barred by the principles of claim preclusion.

■ Neither can Durre successfully ar-gue that the Act, by which Congress over-turned the Supreme Court's *Demarest* deci-sion, deprived him of a vested right and hence denied him due process. Durre's right to the witness fees did not exist at the time of the congressional legislation,

because it had been eliminated by our un-appealed decision against him.

AFFIRMED.