821 F.Supp. 1432 (1993)
In re The DEPARTMENT OF ENERGY STRIPPER WELL EXEMPTION LITIGATION.
MOBIL OIL CORPORATION, et al., Plaintiffs,
v.
UNITED STATES DEPARTMENT OF ENERGY, et al., Defendants.
No. Civ. A. 78-1070.
United States District Court, D. Kansas.
May 7, 1993.
Leslie K. Dellon, Lepon, McCarthy, Jutkowitz & Holzworth, Washington, DC, Evan J. Olson, Hershberger, Patterson, Jones & Roth, Wichita, KS, Arthur G. Hofmann, Mobil Exploration & Production, U.S., Inc., Dallas, TX, for Mobil Oil Corp.
N. Sue Allen, Kelley D. Sears, Koch Indus. Inc., Legal Dept., Wichita, KS, for Koch Indus.

MEMORANDUM AND ORDER
THEIS, District Judge.
This matter is before the court on the following two motions filed by Mobil Oil Corporation (Mobil): Motion to enforce judgment against Koch Industries, Inc. (Doc. 2109) and Motion for sanctions against Koch Industries, Inc. (Doc. 2112). The court heard oral argument on April 23, 1993. The court has considered the arguments presented at the hearing and the briefs previously filed by the parties and is now prepared to rule.

1. Motion to Enforce Judgment
Mobil's motion to enforce arises from the parties' disagreement regarding the amount Koch Industries, Inc. (Koch) owes Mobil pursuant to this court's judgment. Mobil has calculated Koch's liability at $3,779,195.00 as of January 31, 1993, plus additional interest at the DOE policy rate until Koch fully satisfies the judgment. Koch mailed a check in the amount of $3,191,309.97 which Mobil received on February 19, 1993. The parties entered into a stipulation (Doc. 2116) that Koch would pay $3,191.309.97 so that interest would not continue to accrue on that amount. Both sides reserved their rights to have the court determine the exact amount due.
The issues identified by Koch are: (1) whether the DOE policy rates of interest continue to apply after the entry of judgment or whether the rate provided by the postjudgment interest statute applies; (2) what date is "the date of the entry of the judgment" for purposes of computing pre- and postjudgment interest; and (3) whether or how the interest is to be compounded.
The following background is necessary for an understanding of the present dispute. On August 13, 1990, this court granted summary *1433 judgment in favor of Mobil on its third party complaint against Koch. Doc. 1913 (published at 743 F.Supp. 1467). In that order, the court found Koch liable to Mobil for a severance tax refund which Koch received from the State of Oklahoma but which Koch failed to remit to the escrow account, plus interest at the DOE policy rates. The court also held Koch liable for interest imposed by DOE on Mobil based on delayed payments Koch made to Mobil to forward to the escrow.
On August 27, 1990, Koch moved for reconsideration of the applicable interest rate. Koch argued that the court should not have held Koch liable for interest at the DOE policy rates for the period prior to the date of the Oklahoma severance tax refund. Koch next argued that the court should not have held Koch liable for interest at the DOE policy rates for the period after it received and retained the severance tax refund. Finally, Koch challenged the factual basis for the late payment issue. See Docs. 1923-1925. The court granted the motion to reconsider in part. The court ruled that Koch was not liable to Mobil for interest at the DOE policy rate for escrow deficiencies attributable to the severance tax refund until the date Koch received the refund, November 22, 1983. The court held that Koch was liable for interest at the DOE policy rates from the date Koch received the tax refund from Oklahoma until the date Koch pays the judgment. The court rejected Koch's challenge to the late payment issue. Doc. 1947 (Oct. 12, 1990).
On October 25, 1990, both Mobil and Koch filed motions for reconsideration or clarification. Mobil sought clarification that Koch was liable for the total tax refund received from Oklahoma (i.e., tax plus the interest paid by the State) plus interest at DOE policy rates on the total tax refund from the date of the refund until the date Koch pays the judgment. Docs. 1950-1951. Koch's motion for reconsideration challenged for the second time the late payment issue. Docs. 1952-1953. By memorandum and order dated December 11, 1990, the court granted Mobil's motion to clarify and denied Koch's motion to reconsider. The court stated that it was holding Koch liable for the total tax refund received from Oklahoma (tax plus interest paid by the State) plus interest at the DOE policy rates from the date of the refund until the date judgment is paid. Doc. 1977 (Dec. 11, 1990).
On February 12, 1991, the court certified the August 13, 1990, October 12, 1990 and December 11, 1990 orders as final pursuant to Fed.R.Civ.P. 54(b), thereby allowing an appeal to be taken.
Koch subsequently appealed to the Temporary Emergency Court of Appeals (TECA) and the Tenth Circuit. TECA affirmed. In re: The Department of Energy Stripper Well Exemption Litigation, 968 F.2d 27 (Temp.Emer.Ct.App.1992). Koch argued on appeal that this court abused its discretion by holding Koch liable for prejudgment interest at the DOE policy interest rate. See Exhs. 2 and 3 to Doc. 2110. Specifically relevant to the present dispute, TECA affirmed the application of the DOE policy interest rate for prejudgment interest. 968 F.2d at 38-39. In a footnote, TECA noted the court's application of the DOE policy rate as the postjudgment interest rate, i.e., from the date of judgment until the date the judgment is paid. Id. at 30 n. 1 ("By its Orders of October 12, 1990 and December 11, 1990, the court clarified its holding by explaining that Koch was liable for the total severance tax refund (principal and interest paid by Oklahoma) plus interest at DOE policy rates from the date that Koch received the refund until judgment was paid.").
On December 31, 1992, the Tenth Circuit dismissed Koch's appeal for lack of subject matter jurisdiction. In re: The Department of Energy Stripper Well Exemption Litigation, 983 F.2d 172 (10th Cir.1992).
Mobil argues that all aspects of this court's decision, including the interest rate to be applied to the amount of the judgment, are law of the case.
Koch argues that the court need not enter an order enforcing judgment, because it has paid $3,191,309.97 and intends to pay any additional amount found to be due. Koch identified the following three issues for decision: (1) whether the postjudgment interest statute, 28 U.S.C. § 1961, governs the rate and method of calculating postjudgment interest; (2) what is the date of judgment; and *1434 (3) what methodology is to be used to calculate prejudgment interest at DOE policy rates. The court shall address each of these issues in turn.

A. Rates of Interest
Koch argues that the postjudgment interest statute, 28 U.S.C. § 1961, dictates the rate of postjudgment interest and the method of compounding and that the court has no authority to award postjudgment interest at a different rate (i.e., at the higher DOE policy rate). Koch asserts that the issue of postjudgment interest was neither litigated nor decided in this action and that TECA only affirmed the imposition of prejudgment interest at the DOE policy rates. See Doc. 2114 at 10. Koch also argues that TECA's mandate requires that the judgment bear interest at the rate provided by law. See Fed.R.App.P. 37 ("Unless otherwise provided by law, if a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date the judgment was entered in the district court."). Koch argues that the interest allowed by law is the interest rate specified in 28 U.S.C. § 1961.
The postjudgment interest statute provides in pertinent part:
(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.
28 U.S.C. § 1961(a). The only notable exception to this rule is found in section 1961(c)(1), which dictates different rates of interest in internal revenue tax cases. 28 U.S.C. § 1961(c)(1).
Mobil argues that Koch is bound by this court's decision that the DOE policy interest rate applies postjudgment. The court previously ruled that the DOE policy interest rate would apply until the date the judgment is paid. On appeal, Koch challenged the use of the DOE rate as the prejudgment interest rate, but did not challenge the use of the DOE rate for the postjudgment rate. Mobil further argues that the DOE policy rate properly applies to both prejudgment and postjudgment interest.
Mobil argues that Koch is attempting to relitigate an issue that was decided by this court and for which the time to appeal has expired. Mobil cites United States v. Tippett, 975 F.2d 713 (10th Cir.1992) in support of its position. However, Mobil's reliance on Tippett is misplaced. In Tippett the Tenth Circuit addressed claim preclusion, i.e., res judicata. The factual scenario before this court involves issues of law of the case, not res judicata.
Unlike the various rigid rules of res judicata, the more amorphous concept of law of the case determines whether a court's prior decision on a rule of law should continue in force in subsequent stages of the same case. Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). As it is most frequently applied, law of the case encompasses a lower court's adherence to its own prior rulings, to the rulings of its superior court in the case, or to the rulings of another judge or court in the same case or a closely related case. 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478, at 788 (1981).
Mobil argues generally that the court should adhere to its prior rulings. On this topic, Professors Wright, Miller and Cooper have stated:
Although courts are often eager to avoid reconsideration of questions once decided in the same proceeding, it is clear that all federal courts retain the power to reconsider if they wish. Law of the case principles in this aspect are a matter of practice that rests on good sense and the desire to protect both court and parties against the burdens of repeated reargument by indefatigable diehards.... Most recent decisions suggest that the major grounds the *1435 justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.
18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478, at pp. 789-90 (1981) (footnotes omitted).
The Tenth Circuit has stated that the law of the case doctrine "is a restriction selfimposed by the courts in the interests of judicial efficiency. It is a rule based on sound public policy that litigation should come to an end, and is designed to bring about a quick resolution of disputes by preventing continued re-argument of issues already decided." Fox v. Mazda Corp. of America, 868 F.2d 1190, 1194 (10th Cir.1989) (quoting Gage v. General Motors Corp., 796 F.2d 345, 349 (10th Cir.1986)) (citations omitted).
Additionally, Mobil bases its argument on a less common fourth aspect of the law of the case doctrine, under which courts may give preclusive effect to a ruling that could have been appealed, but has been abandoned by a failure to do so. 18 Wright, Miller & Cooper, supra § 4478, at 801. The purpose underlying this fourth category of abandonment or waiver has been summarized as follows:
[T]he whole point of the rule regarding abandonment of claims is to require that all viable arguments be vigorously pursued throughout the proceedings, thereby allowing for earlier decision, rather than permitting parties to pick and choose which claims will be presented on appeal and which will be held back until a later time.
Washington Post Co. v. U.S. Dep't of Health and Human Servs., 865 F.2d 320, 327 n. 9 (D.C.Cir.1989).
Koch could have sought reconsideration or clarification if it was unsure of the postjudgment interest rate being applied by the court or if it believed the court was applying an incorrect postjudgment interest rate. Koch filed two motions for reconsideration addressing other issues, including the general application of the DOE policy interest rate. Koch's current arguments regarding postjudgment interest were not raised therein. Nor did Koch raise these arguments on appeal to TECA and the Tenth Circuit. Koch's actions indicate an attempt to piecemeal this litigation. While the court does not condone the resurrection of issues which have previously been waived, the court does find it appropriate to reconsider the postjudgment interest rate issue. The court notes that Mobil does not challenge the authority of this court to reconsider its prior ruling on postjudgment interest.
The court notes initially that the postjudgment interest rate is set by statute while the DOE rates are set by regulation. The court must follow the applicable statute if it conflicts with the regulation. The court also notes that it intended to treat this action as if it were a DOE administrative restitution action. Thus, the court applied the DOE policy rate of interest, compounded per DOE policy, until the time restitution is made. The court intended the DOE rates to apply to postjudgment interest. The court notes, however, that this does not answer the question of whether the court was correct in applying that interest rate. If the court applied a legally incorrect rate of postjudgment interest, the court must correct its prior ruling.
Koch relies on Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). While Mobil argues that Koch's reliance on Bonjorno is misplaced, the court finds the decision instructive. Four issues were presented to the Supreme Court in Bonjorno: whether interest should be calculated from the date of the verdict or the date of judgment; whether interest should be calculated from the date of a legally insufficient judgment; the proper application of 28 U.S.C. § 1961 to judgments entered before the effective date of the amended section 1961; and whether a higher rate of interest than provided by section 1961 should apply. See Bonjorno, 494 U.S. at 833, 838, 110 S.Ct. at 1575, 1578. On the first issue, the Supreme Court held that postjudgment interest runs from the date of the entry of judgment, and not the date of the verdict. Id. 494 U.S. at 835, 110 S.Ct. at 1576. On the second issue, the Court held that postjudgment interest should not run from the date of a judgment that was later set aside by the district court as not supported *1436 by the evidence. Id. The Supreme Court's disposition of these two issues is not relevant to this court's decision.
Prior to its amendment in 1982, the postjudgment interest statute provided for postjudgment interest at the State law rate. 28 U.S.C. § 1961 (1976 Ed.). On April 2, 1982, Congress amended section 1961, effective October 1, 1982. Pub.L. 97-164, 96 Stat. 25. The amended section 1961 provides for postjudgment interest at the specified Treasury bill rate. 28 U.S.C. § 1961. In Bonjorno, the Supreme Court ruled that amended section 1961 was not applicable to judgments entered before its effective date. Bonjorno, 494 U.S. at 836, 110 S.Ct. at 1577. The Supreme Court stated that "The language of each version of the statute also directs that a single applicable rate of interest be applied to the judgment: the prior version refers to `the rate' and the amended version to `a rate.'" Id. The Supreme Court read the statute to provide that "the interest rate for any particular judgment is to be determined as of the date of the judgment, and that is the single rate applicable for the duration of the interest accrual period." Id. 494 U.S. at 838-39, at 1577-78. The Supreme Court discussed the brief legislative history. Congress' single stated purpose for altering the interest rate from the State law rate to the Treasury bill rate was to remove the economic incentive to appeal that losing defendants may have had. Since State law interest rates were below market rates, losing parties had an incentive to retain their money and accumulate interest at the commercial rate during the pendency of the appeal. Id. 494 U.S. at 838, 110 S.Ct. at 1578 (discussing S.Rep. No. 97-275, U.S.Code Cong. & Admin.News 1982, p. 11).
The fourth and final issue addressed by the Supreme Court in Bonjorno was whether the rate of interest could be set at a rate higher than that afforded by section 1961:
"At common law judgments do not bear interest; interest rests solely upon statutory provision." Pierce v. United States, 255 U.S. 398, 406, 41 S.Ct. 365, 368, 65 L.Ed. 697 (1921). Where Congress has not seen fit to provide for a higher rate of interest with respect to antitrust suits and has set a definite interest rate that governs this case, the courts may not legislate to the contrary.
Id.
Mobil argues that the postjudgment interest statute does not preclude the application of the DOE policy rate. The DOE policy rate applies in administrative proceedings from the date of the overcharge to the date of restitution. See 46 Fed.Reg. 21412, 21413-14 (April 10, 1981). The corresponding time period in judicial proceedings would encompass both prejudgment and postjudgment interest, i.e., until the judgment is paid. However, the Supreme Court's decision in Bonjorno indicates that only Congress, not an administrative agency, can provide for a higher postjudgment interest rate in certain classes of cases. Congress did not provide a higher postjudgment interest rate for the present type of case. While DOE has established a higher interest rate to apply in administrative enforcement proceedings, this is not an administrative proceeding.
In a series of cases, TECA has adopted the DOE policy interest rates as the appropriate rate of prejudgment interest in overcharge cases. In an appeal from another aspect of this litigation, TECA approved the use of the DOE policy rates to calculate liability for prejudgment interest. In re Department of Energy Stripper Well Exemption Litigation (Chevron U.S.A., Inc. v. Department of Energy), 944 F.2d 914, 916 (Temp.Emer.Ct. App.1991). TECA expressly approved the use of DOE policy rates for prejudgment interest in the present action. In re Department of Energy Stripper Well Exemption Litigation (Koch Industries, Inc. v. Mobil Oil Corp.), 968 F.2d 27, 39 (Temp.Emer.Ct. App.1992).
In the context of other overcharge proceedings, TECA has approved the imposition of prejudgment interest at the DOE policy rates. Citronelle-Mobile Gathering, Inc. v. Herrington, 826 F.2d 16, 29-30 (Temp.Emer. Ct.App.), cert. denied, 484 U.S. 943, 108 S.Ct. 327, 98 L.Ed.2d 355 (1987); Lea Exploration, Inc. v. Department of Energy, 843 F.2d 510, 512-14 (Temp.Emer. Ct.App.1988).
*1437 Also in the context of other overcharge proceedings, TECA has ruled that the postjudgment interest statute, 28 U.S.C. § 1961, governs the calculation of postjudgment interest, notwithstanding the application of a different rate by DOE at the agency level. Christmann & Welborn v. Department of Energy, 773 F.2d 317, 321 (Temp.Emer.Ct. App.), cert. denied, 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985). This court will follow section 1961 as dictated by TECA in Christmann & Welborn.
This court's conclusion is in line with decisions of other courts which have faced the applicability of varying postjudgment interest rates under state and federal law. Other courts which have addressed the issue have held that the postjudgment interest statute, 28 U.S.C. § 1961, controls the rate of prejudgment interest on federal civil money judgments. Compressed Gas Corp. v. United States Steel Corp., 857 F.2d 346, 353 (6th Cir.1988), cert. denied, 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989); NisshoIwai Co. v. Occidental Crude Sales, Inc., 848 F.2d 613, 622-25 (5th Cir.1988); Schumann v. Levi, 728 F.2d 1141, 1143 (8th Cir.1984).

B. Date of Judgment
Pursuant to 28 U.S.C. § 1961, interest is to be calculated "from the date of the entry of the judgment." Koch argues that the date of judgment is the date the court certified its orders as final pursuant to Fed.R.Civ.P. 54(b). Mobil agrees with Koch that the "date of judgment" is February 12, 1991, the date that the court entered the Rule 54(b) certification, thereby allowing an appeal to be taken.

C. Method of Compounding
Koch argues that Mobil is not entitled to use quarterly compounding in computing prejudgment interest. Koch calculated prejudgment interest using the simple DOE policy rates, i.e., not compounded. Koch computed postjudgment interest at the statutory rate compounded annually.
The court was silent on compounding; however, DOE's interest rate policy specifies quarterly compounding. 46 Fed.Reg. 21412, 21414 (April 10, 1981). Thus, prejudgment interest shall be computed using quarterly compounding. Mobil's motion to enforce judgment shall be granted as to this issue.
The postjudgment interest statute provides for annual compounding:
(b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually.
28 U.S.C. § 1961(b). Postjudgment interest shall be compounded annually pursuant to this provision.

D. Application of the United States Rule
Mobil raised an issue at the hearing regarding the application of the United States Rule, which directs the allocation of partial payments. Under the United States Rule, "a creditor may allocate partial payments on an interest-bearing debt first to accrued interest that is due, and then to principal." In re Department of Energy Stripper Well Exemption Litigation (Chevron U.S.A., Inc. v. Department of Energy), 944 F.2d 914, 916 (Temp.Emer.Ct.App.1991). This rule applies in the absence of a clearly expressed intention to allocate partial payments in some other way. Id. As noted by TECA, the United States Rule applies in this litigation to escrow payments required after January 1983, when the Supreme Court denied certiorari in Energy Reserves Group, Inc. v. Hodel, 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983), thus resolving the question regarding the validity of DOE's Ruling 1974-29. See 944 F.2d at 917.

2. Motion for Sanctions
Mobil has filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, Local Rule 110, and the court's inherent powers. Mobil seeks sanctions against Koch for causing unnecessary delays and needlessly increasing the cost of the litigation. Specifically, Mobil seeks: (1) an award of attorney fees and costs for its expense in litigating since August 13, 1990, when the court entered summary judgment against Koch; (2) a fine to be paid into the M.D.L. 378 escrow; and (3) any further relief *1438 the court deems just. Mobil seeks sanctions based on Koch's failure to pay the full amount of the judgment following TECA's affirmance of this court on appeal. Mobil argued at the hearing that its motion for sanctions was directed at Koch itself, and not at Koch's counsel.
The court finds that neither Koch not its counsel committed any sanctionable conduct. Since Koch has prevailed on some of the issues it has raised, Koch's position certainly was defensible. The court must again note that it is not pleased by Koch's piecemealing of issues in the present litigation. However, the court is duty-bound to correct an erroneous ruling.
IT IS BY THE COURT THEREFORE ORDERED that Mobil's motion to enforce judgment against Koch (Doc. 2109) is hereby granted in part and denied in part as specified in this opinion and order.
IT IS FURTHER ORDERED that Mobil's motion for sanctions against Koch (Doc. 2112) is hereby denied.
The parties are hereby directed to calculate the total amount of the judgment in accordance with the rulings made herein and to submit an agreed journal entry within thirty (30) days from the date of this memorandum and order. The journal entry shall also specify any amounts remaining due to Mobil and shall specify the date on which Koch shall make payment.