**SOO LINE RAILROAD COMPANY,**
Plaintiff–Appellant,

v.

**ESCANABA & LAKE SUPERIOR**
**RAILROAD COMPANY,**
Defendant–Appellee.

No. 87–1975.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 4, 1988.

Decided Feb. 23, 1988.

Rehearing Denied April 19, 1988.

Robert V. Abendroth, Whyte & Hirschboeck, S.C., Milwaukee, Wis., for plaintiff-appellant.

Larry H. Mitchell, Arnall, Golden & Gregory, Washington, D.C., for defendant-appellee.

Before CUDAHY, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

The Soo Line Railroad and the Escanaba & Lake Superior Railroad are locked in a durable struggle attributable to the Connecting Line, some 21 miles of track between Crivitz and Marinette, Wisconsin. *In re Chicago, Milwaukee, St. Paul & Pacific R.R.*, 784 F.2d 831 (7th Cir.1986) (*Escanaba I*), holds that the Soo must arbitrate with the Escanaba about ownership of the line. (The arbitrators awarded the line to the Escanaba and fixed its price. A district court in Minneapolis enforced this award.) *In re Chicago, Milwaukee, St. Paul & Pacific R.R.*, 789 F.2d 1281 (7th Cir.1986) (*Escanaba II*), holds that the Soo, rather than the successor to the bankrupt Milwaukee Road, is the right party to arbitrate with the Escanaba about any damages attributable to the deferred conveyance. This opinion is fated to be known as *Escanaba III*.

Before we decided *Escanaba I*, the Soo and the Escanaba had filed suits in the Eastern District of Wisconsin. The Escanaba demanded that the Soo arbitrate with it about damages attributable to the delay. The Soo demanded that Escanaba pay about $344,000 in interline freight balances. An "interline balance" is the net payable after two railroads have offset sums due to each other for similar services. When a shipment of freight moves on two or more lines, a single line will collect the whole charge (the originating carrier from the shipper, or the terminating carrier from the consignee). The collecting railroad must reimburse the railroads that carried the freight, according to divisions of revenues filed with the ICC. On the 18th of each month all of the nation's railroads send each other abstracts of waybills showing which ones moved how much freight; on the 20th they send each other statements of sums collected on account of these movements. Each pair of railroads sets off the accounts between them, leaving a balance payable. This interline balance is supposed to be paid promptly. Just how promptly has been a subject of controversy. See *In re Iowa R.R.*, 840 F.2d 535 (7th Cir.1988); *Boston & Maine Corp. v. Chicago Pacific Corp.*, 785 F.2d 562 (7th Cir.1986); *In re Penn Central Transportation Co.*, 486 F.2d 519 (3d Cir.1973) (en banc); *Southern Ry. v. United States*, 306 F.2d 119 (5th Cir.1962). We need not enter that thicket. It is enough to know that the payment of interline balances is essential in a system in which railroads regularly collect sums attributable to transportation performed by other carriers.

The district court consolidated the two cases. In light of *Escanaba I* and *II*, the district court held that the Soo is obliged to arbitrate the Escanaba's claim for damages as a result of the delay in transferring the Connecting Line. The last paragraph of the opinion deals with the claim for interline balances:

> [T]he Escanaba has only weakly challenged the Soo's claim that it is due $344,481.94 for past services. The Soo, on the other hand, has adequately substantiated its position. The Soo's motion for summary judgment is therefore GRANTED.

On December 4, 1986, the court inserted this language on the form customarily used for final judgments under Fed.R.Civ.P. 58:

Escanaba's motion for summary judgment is granted in 85–C–810 and Soo's motion for summary judgment is granted in 85–C–1695.

This document does not specify the relief to which either party is entitled.

The Soo took its medicine on the arbitration component of the case, although the parties still disagree about where the arbitration should be held. The Soo prefers Minneapolis, which will direct any enforcement proceedings to the Eighth Circuit; the Escanaba prefers Milwaukee, in the hope that a suit to enforce would return to the district judge who ordered the Soo to arbitrate. The Escanaba was not happy about the disposition of the claim for interline balances, however. It filed a motion for reconsideration under Fed.R.Civ.P. 59 or, in the alternative, for a stay of enforcement under Fed.R.Civ.P. 62(h).

The Soo also was unhappy, because it had requested pre-judgment interest. It reminded the district judge that it wanted that relief. In May 1987 the district court entered an order, the entire operative language of which is:

> I find that, considering the rather peculiar circumstances of these cases, the Escanaba is entitled to the relief it seeks. Accordingly, its motion is GRANTED, and the judgment in 85–C–1695 is stayed until the parties' arbitration proceeding is completed. No bond is required.

This order did not address the pending request for interest, so the Soo sent the district judge a letter seeking clarification and an explicit resolution of the question. The district court did not respond to this letter. The Soo filed a notice of appeal. It protests the stay and seeks prejudgment interest.

### I

This case is shot through with jurisdictional problems.

1. Despite the request in *Ivanov–McPhee v. Washington National Insurance Co.*, 719 F.2d 927, 930 n. 2 (7th Cir. 1983), that district judges indicate the extent to which cases have been consolidated, the order dealing with these two is silent on the subject. Have they been consolidated just to hold convenient hearings, or have they been merged? The question is important because appellate jurisdiction depends on the finality of the judgment, and a disposition might be final with respect to one case but not the other. If the cases have been merged for all purposes, any open question prevents an appeal in the absence of findings under Rule 54(b); if the cases retain separate identities, appellate jurisdiction depends only on the finality of the disposition of each separate case. See *Sandwiches, Inc. v. Wendy's International, Inc.*, 822 F.2d 707 (7th Cir.1987).

The district court entered a single judgment in the two cases, which suggests that they are merged. The Escanaba insists that the arbitration case is alive in the district court because the district judge may entertain one party's request to enforce (and the other's request to set aside) any award. This would prevent an appeal concerning the interline balance, if the cases are merged. Under *Ivanov–McPhee* and *Sandwiches*, however, we inquire whether cases that have been "consolidated" to an unspecified degree are functionally similar and present overlapping issues. Until the district judge granted a stay of the interline balance case pending the arbitrators' award, we would not have supposed that the cases are linked by more than the identity of the parties.

We shall not have to decide whether these cases have been consolidated in the sense of merger, because we believe that the order compelling the parties to arbitrate is independently final. We had a similar problem in *Escanaba I* and observed that an order compelling arbitration ordinarily is not final because much remains to be done. But "[t]hrough a 'fluke in the law' ... an order to arbitrate is nonetheless appealable if it terminates all proceedings in the district court." 784 F.2d at 833 (citation omitted). The order in *Escanaba I* did not terminate the case, so appellate jurisdiction depended on a separate fluke, one concerning bankruptcy appeals under the law that prevailed before the Bankruptcy Code of 1978. The order in

this case does terminate the proceedings. The district judge sent the parties packing—perhaps all the way to Minneapolis. Even if the arbitrators decide to meet in Milwaukee (as the Escanaba says they must, a question on which we express no view), both sides may be satisfied with the result. (This is a theoretical possibility only, given the parties' track records.) If one party seeks judicial review, that will be a new suit and may be heard by a different judge. *City of Naples v. Prepakt Concrete Co.*, 490 F.2d 182 (5th Cir.1974). We conclude, then, that the order to arbitrate was "final", so that even if the cases are fully consolidated, the judgment of December 4, 1986, is appealable—provided it is "final" with respect to the interline balances too.

■ 2. The judgment entered in this case is defective because it does not specify the relief to which the prevailing parties are entitled. The Soo could not execute on a judgment saying that its motion for summary judgment is granted. To be final, a judgment must be self-contained and specify the relief awarded; it is not enough to refer parties to the court's opinion. See, e.g., *Foremost Sales Promotions, Inc. v. Director, BATF*, 812 F.2d 1044 (7th Cir. 1987). *Foremost* dismisses an appeal from a similarly incomplete judgment.

■ This case, however, contains a final *decision* even if it does not contain a final *judgment*. The statute, 28 U.S.C. § 1291, authorizes appeals from final decisions, and the parties may waive the requirement of a final judgment on a separate paper complying with Rule 58. *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). The parties have briefed this appeal fully; the Escanaba's brief represented that the decision is appealable (though it considered only a problem yet to be discussed); the district court itself thought it had liquidated the damages. Why else did it "stay" the award in May? A stay is unnecessary if there is not yet a final decision. The district court's docket sheet recites that the judgment awards $344,481.94 to the Soo, even though the judgment is silent on that question. The Soo is entitled as a matter of course to an order under Fed.R.Civ.P. 60(a) amending the judgment to recite the relief it has obtained. See *United States v. Griffin*, 782 F.2d 1393 (7th Cir.1986). So the subject has been wrapped up. Unless we are to become a citadel of technicality, this defect does not obstruct our jurisdiction.

■ 3. A judgment awarding a sum of money representing principal is not final if a question concerning pre-judgment interest remains for decision. *Kaszuk v. Bakery and Confectionery Union*, 791 F.2d 548, 553 (7th Cir.1986). The Soo's complaint asked for pre-judgment interest; after the district court awarded summary judgment for the Soo without discussing the matter, the Soo reminded the court of the request; after the district court disposed of the case without handling the matter, the Soo requested clarification; the district court ignored the request.

Surely a party is entitled to a decision by a district judge on an important element of damages requested in the complaint and advanced consistently thereafter. Overlooking the request the first time may be chalked up to inadvertence and the press of business, but a demand hammered home calls for explicit treatment. Perhaps the district judge believes that any request not granted is denied. That approach plays hob with appellate jurisdiction, however. And although in December 1986 there was no requirement that district judges give reasons when disposing of motions for summary judgment, Circuit Rule 50—which went into effect in March 1987—requires a statement of reasons. Both ascertaining appellate jurisdiction and engaging in appellate review are difficult if district judges ignore requests for relief.

■ If a request for pre-judgment interest is pending in the district court, we lack appellate jurisdiction. We could at most issue a writ of mandamus to compel

the district court to render a decision. It is apparent, however, that the district judge is not even considering the possibility of awarding interest. When a district judge ignores an important issue in a case and issues a terminating order, that decision is final even though it would not be if the district judge planned to rule on the same issue. Compare *Hickey v. Duffy*, 827 F.2d 234, 238 (7th Cir.1987), with *Bieneman v. City of Chicago*, 838 F.2d 962 (7th Cir.1988). This approach does not undermine the rule that unless the judgment covers all of the claims in a single "judicial unit", it is not final. A motion pending for a long time is not to be treated as denied; in such a case the party aggrieved by the delay must seek mandamus rather than file an appeal. We are confident that this case has been terminated, that the district court itself believes that there is no more to do. When the district court has performed the last act it ever intends to perform, the losing party may appeal.

4. We must consider, too, the effect of the stay of enforcement entered in May 1987. Perhaps this order eliminates the finality of the judgment, on the ground that payment has been linked with the arbitration. The Soo contends that the stay puts it "effectively out of court" and is therefore a final decision on the rationale of *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 10, 103 S.Ct. 927, 934, 74 L.Ed.2d 765 (1983). We doubt that the Soo is "out of court" any more than it would have been if the district court had postponed ruling on the Soo's motion for summary judgment until seeing what the arbitrators would do. The district judge has the final word, and interest may compensate the Soo for the delay.

This is unimportant, however, if the stay is itself the terminating order of the case— and it is. Suppose the district court had awarded the Soo $344,000 and allowed the Escanaba to satisfy the judgment with a promissory note payable in 1990. That would have been a final decision. It would

have finally adjudicated the Soo's entitlements and named the relief (a promissory note) to which the Soo was entitled. That the note might be thought inadequate relief would be an argument on appeal rather than an obstacle to appellate jurisdiction. So, too, if the district judge had ordered the Escanaba to satisfy the judgment with a note maturing on the date the arbitrators rendered a decision, and thereafter payable on demand. This also is a form of relief, though perhaps a defective one.

The combination of a decision to award $344,000 plus a stay until the arbitrators render their decision is no different from satisfaction of the judgment by the Escanaba's note due on that date. In either case the Soo is the Escanaba's creditor, but unable to demand immediate payment. The terms of the district court's order suggest that the stay lifts automatically on the arbitrators' decision. The decision ends the litigation and leaves nothing but execution, making it final, see *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Execution lies in the future, but the judgment is final today.

## II

The merits are a lot easier.

1. The Escanaba requested a stay on the authority of Fed.R.Civ.P. 62(h), which says:

> When a court has ordered a final judgment under the conditions stated in Rule 54(b), the court may stay enforcement of that judgment until the entering of a subsequent judgment or judgments and may prescribe such conditions as are necessary to secure the benefit thereof to the party in whose favor the judgment is entered.

This rule deals with final judgments on a single claim, made appealable under Rule 54(b) while other claims remain for decision. The paradigm is a case like *Curtiss-Wright Corp. v. General Electric Co.*, 446

U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), in which the court enters judgment on the principal claim while a counterclaim is pending. Our case does not involve separate claims, one of which was made final (and hence immediately payable) under Rule 54(b). We have already held that there is a single judgment, finally disposing of all claims before the district court. Rule 62(h) is inapplicable.

The Escanaba takes the position that district courts have inherent authority to stay the execution of their judgments, even if no rule authorizes a stay. There is something to the proposition. We concluded in *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 786 F.2d 794 (7th Cir.1986), that district courts may stay execution of a judgment pending appeal on less than complete bond, even though no statute or rule explicitly authorizes such a stay. Since the court could decline to enter the judgment pending some other event, to deny it the authority to stay execution is to induce it to use this other device.

"Inherent authority" is not a substitute for a good reason, however. "Inherent authority", like its cousin in criminal law the "supervisory power", is just another name for the power of courts to make common law when statutes and rules do not address a particular topic. Cf. *United States v. Widgery*, 778 F.2d 325, 328–29 (7th Cir.1985). A court needs a good reason to create a new rule of common law; and given the rule, there must be a good reason for the exercise of the power in a particular case. We do not decide whether courts possess the authority to defer execution of their judgments in the absence of a grant by statute or rule. If the power exists, this is not an appropriate case for its exercise.

The district judge did not give a reason for deferring execution of the judgment. The court referred to "the rather peculiar circumstances of these cases" without specifying what circumstances it had in mind, why they are "rather peculiar", or why the peculiarity calls for a stay. The case involves a standard commercial problem. The Escanaba owes the Soo money on account of one business transaction; the Soo may or may not owe the Escanaba money on account of another; the debtor for the moment wants to hold on to what it has for as long as it can. If the arbitrators award more than $344,000 to the Escanaba, it wants to set off the two debts and collect the balance—improving both its cash flow and its security in the interim. If the arbitrators award the Escanaba less than $344,000, it has delayed payment. If the Soo is getting less interest on the $344,000 than the Escanaba can earn by investing that sum, the difference is gravy. The Escanaba does not contend that the Soo earned the interline balance of $344,000 by violating contractual obligations relating to the Connecting Line. The interline balance and the arbitration are related only in the sense that the two railroads have become antagonists, and each wants money from the other. That is not enough to defer payment of one debt while the arbitrators deliberate about a second.

■ Courts regularly require the payment of undisputed debts while the parties litigate their genuine disputes. See *Curtiss–Wright* and, e.g., *Schieffelin & Co. v. Valley Liquors, Inc.*, 823 F.2d 1064 (7th Cir.1987). This reflects the limits of the common law right of set-off between debts. Setoffs are permitted only when the debts are "mutual", and debts arising at different times out of different circumstances are not mutual. Indeed, self help in the business world—where one party seizes assets that belong to another, in order to improve its bargaining position concerning a genuinely disputed sum—is presumptively tortious. E.g., *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1287–88 (7th Cir.1985) (treating one party's retention of another's goods in such circumstances as conversion). The Escanaba was (and is) holding funds that belong to the Soo; whether it wants to improve its cash flow position or its bargaining position is immaterial. It cannot doubt that the Soo

552

has the funds to pay any award the arbitrators make, and it is not entitled to engage in self-help remedies along the way.

We are prepared to believe that the Soo has dragged its heels in the arbitration; it has litigated everything to the eyeballs so far and seems likely to continue. It may also be that the arbitrators will award the Escanaba damages exceeding $344,000 in connection with the Connecting Line. As in *Escanaba I* and *II*, we stand clear of that dispute, which the parties have assigned by contract to a different forum. The possibility that the Escanaba has a good claim for damages just sets the stage for a setoff and does not resolve the question whether delay in anticipation of setoff should be permitted. This case in fact shows the trouble with self help.

■ The payment of interline balances is an essential ingredient of a transportation system in which few lines can handle a long shipment from beginning to end. A shipment can pass over the track of multiple lines only if there is cooperation among railroads. Discharge of interline balances is so important to interstate transportation that the Third Circuit held in *Penn Central* that the balances are held in trust for the railroads providing the transportation—a position that, if adopted in this circuit, would have serious consequences for the Escanaba. There is no polite name for a trustee who holds trust funds hostage on account of unrelated disputes. In *Iowa R.R.* we held that interline balances in the hands of Class III railroads such as the Escanaba are not trust funds. Although the Escanaba does not hold the interline balances as the Soo's trustee, it ought to pay them forthwith. The self-help responses open to the Soo—such as declining to interchange traffic with the Escanaba until the debt is paid—are bazookas, too powerful for the problem at hand and too harmful to shippers caught in the middle. The Soo is entitled to be paid now for interline freight balances.

2. The parties did not discuss in the district court which state's law governs the availability of pre-judgment interest, and they make only passing mention of it here. (The Soo assumes that Wisconsin's law applies, and the Escanaba by footnote contends that Michigan supplies the law.) A federal court sitting in diversity applies the law of the forum state, including its conflicts rules. *Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Wisconsin starts from a presumption that local law applies. *Hunker v. Royal Indemnity Co.*, 57 Wis.2d 588, 204 N.W.2d 897, 902–03 (1973) (collecting cases). When another state has a greater interest in the dispute, Wisconsin will apply that state's law. Since Wisconsin treats as waived issues not presented to the trial court, e.g., *Wisconsin v. Holland Plastics Co.*, 111 Wis.2d 497, 331 N.W.2d 320, 324 (1983), a Wisconsin court would employ Wisconsin law in this case by force of the presumption. We must do the same. See also *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 531 (7th Cir.1985).

■ The interline balances are liquidated monthly. Under the law of Wisconsin, pre-judgment interest is due on trade debts and other contractual entitlements that may be computed with reasonable certainty. See *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370–71 (7th Cir.1985); *Murray v. Holiday Rambler, Inc.*, 83 Wis.2d 406, 438, 265 N.W.2d 513, 529 (1978). That is a good description of interline balances.

The Escanaba replies that Wisconsin requires interest only on the net, when parties are entitled to set off mutual debts, even if one debt is unliquidated. It cites only a Minnesota case, *Knutson v. Lasher*, 219 Minn. 594, 606, 18 N.W.2d 688, 696 (1945), for that proposition. The rule makes sense if the debts arose contemporaneously. If on one date A is indebted to B on a contract, and B to A on a tort claim, and the two sums are identical, neither should receive compensation for the time

value of money, because neither has the benefit of the other's purse. The same principle should control if one debt is bigger than the other; compensation for the time value of money (that is, interest) is due only for the net. Even if A is a billionaire and B a pauper, A can "collect" his debt with certainty through the offset, so neither debt is riskier than the other except to the extent of the excess, which is compensated by interest. But this approach does not work when the debts arise at different times, or when one "debt" is a phantom. If one debt arises in 1978 and the other in 1988, the fact that they have the same principal amount does not imply that they should be offset without interest. One side has had the other's money for a decade, and has reaped the profits available from investment; an award of interest is necessary to restore to the rightful owner the time value of the money. See *West Virginia v. United States*, — U.S. —, 107 S.Ct. 702, 706 n. 2, 93 L.Ed.2d 639 (1987); *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655–56 & n. 10, 103 S.Ct. 2058, 2062, & n. 10, 76 L.Ed.2d 211 (1983); *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1297–99 (7th Cir. 1987). The need to compensate a party for the time value of money in order to make it whole is equally clear when the supposedly offsetting debt may not be a debt at all. The court must award or withhold interest based on the claims presented; what might or might not happen in another forum at a later date should not matter. (Imagine the problems if the district court were to deny interest and the Soo then were to prevail in the arbitration. The arbitrators would not be authorized to add interest on an unrelated debt to make things come out right.)

The Escanaba's debt arose after the Soo's. The Soo earned its interline balances in 1984 and 1985; the Escanaba's damages for delay in transferring the Connecting Line apply to later periods, for only the Milwaukee Road's offer to sell the Con-

necting Line to the Soo in 1985 triggered the Escanaba's contractual right to purchase, and the Escanaba's damages (if any) do not arise out of the same events that create the Soo's entitlement to be paid. And the Escanaba may not receive an arbitral award. The possibility of some overlap of debts for some of the period the Escanaba has owed these interline balances does not augur against an award of interest to the Soo. The parties have not drawn to our attention any Wisconsin case qualifying Wisconsin's presumptive entitlement to interest in the case of trade debts. We conclude that the Escanaba's arguments would not persuade a Wisconsin court to withhold an award of interest in this case.

This conclusion does not necessarily dictate the way in which these parties' obligations ultimately will be settled. The arbitrators may choose to give pre-award interest to the Escanaba at the same rate the district court employs for the Soo, so that the time value of money will be a wash for the periods in which each side had an obligation to the other. This question is for the arbitrators, and we express no opinion on it. We conclude only that the Soo is entitled to interest on sums that should have been paid years ago, no matter what happens in the arbitration. The district court shall fix the amount of interest on remand expeditiously, so that the Soo may at last collect interline freight balances due since 1984.

REVERSED AND REMANDED.