No. 94-3780

Tri-State Hotels, Inc.; Davcor      *
Motor Inns, Inc.; Elite Hotel       *
Associates, Inc.; Turnpike          *
Motor Inns, Inc.; HMS Property      *
Management Group, Inc.;             *
Commerce Hotels, Inc.; Toledo       *
Motor Inns, Inc.; Ottawa Motor      *
Inns, Inc.; Amarillo Hotel          *
Associates, Inc.; Economy           *
Lodging Systems, Inc.; W. David     *
Temel; Frank Leonetti, Jr.,         *
                                    *
          Appellants,               *
                                    *   Appeal from the United States
       v.                           *   District Court for the
                                    *   Western District of Missouri.
Federal Deposit Insurance           *
Corporation, as Receiver for        *
Merchants Bank Inc., and Metro      *
North State Bank, Inc.; The         *
Merchants Bank, Inc.; Metro         *
North State Bank, Inc.,             *
                                    *
          Appellees,                *
                                    *
Eugene J. Pereira; Bradley W.       *
Kreiger; Kirsten H. Mills;          *
Marilyn J. Feingold, Co-Executor*
of the Estate and Last Will and     *
Testament of Frank S. Morgan;       *
Mark Morgan, Co-Executor of the     *
Estate and Last Will and            *
Testament of Frank S. Morgan;       *
Thomas S. Morgan, Co-Executor       *
of the Estate and Last Will and     *
Testament of Frank S. Morgan;       *
Jeff Johnson; David B. Feingold,*
                                    *
          Defendants,               *
                                    *
American Hotel Management           *
Associates, Inc.,                   *
                                    *
          Receiver,                 *
                                    *

Richard K. Rousch; Nassau                    *
Communications, Inc.,                        *
                                             *
          Proposed Parties.        *

                    _____

          Submitted:  December 15, 1995

             Filed:  March 21, 1996
                    _____

Before MAGILL, BRIGHT, and MURPHY, Circuit Judges.
                    _____

MAGILL, Circuit Judge.


     Tri-State Hotels and other appellants (collectively, Tri-State)
appeal the district court's[1] dismissal of defendant Federal Deposit
Insurance Corporation (FDIC), as receiver for two failed banks, for lack
of subject matter jurisdiction due to Tri-State's failure to exhaust
administrative remedies.  Because prior administrative review of claims
against the FDIC is a prerequisite to judicial review of such claims, see
the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA),
codified in relevant part at 12 U.S.C. § 1821(d)(3)-(13) (1994), we affirm.


                              **I.**


     During the period from 1988 to 1992, Tri-State entered into various
agreements with Merchants Bank (Merchants) and Metro North State Bank
(Metro North) to purchase and finance certain distressed motel and hotel
properties.  As part of the agreement, Merchants and Metro North assured
Tri-State that they would provide additional refinancing to Tri-State when
requested, and they agreed to limit Tri-State's liability in the event of
default on any loans

---

[1]The Honorable Dean Whipple, United States District Judge
for the Western District of Missouri.

made in connection with the properties.

Merchants consolidated the loans, and in June 1992, it agreed to invest an additional $1 million in equity in the arrangement and to refinance $1.3 million of the loans. Merchants breached the agreement during the summer of 1992 by failing to complete the refinancing and failing to provide the promised funding, but it continued to assure Tri-State that it would perform all of its obligations. Despite these assurances, Merchants never fulfilled its obligations, and on December 2, 1992, Tri-State mailed notice to Merchants that it was revoking the refinancing agreement due to Merchants' breach of the agreement.

Merchants went into receivership on November 20, 1992, and the FDIC was appointed receiver.[2] In December, January, and February, the FDIC published notice in the <u>Kansas City Star</u> newspaper that creditors had until March 16, 1993, to present to the FDIC any claims they had against Merchants. The FDIC also mailed notice of the receivership to all creditors of Merchants; however, because Tri-State is a debtor of Merchants, notice was not mailed to Tri-State. Although Tri-State had actual knowledge of the receivership, it did not file a timely claim with the FDIC for the breach of contract by Merchants.

In August 1993, Tri-State and the FDIC began a review of Tri-State's obligations under the agreements between Tri-State and Merchants. This review consisted of face-to-face meetings and numerous phone calls and correspondence between Tri-State and the FDIC. On February 17, 1994, the FDIC finished its review and analysis of the agreements and concluded that the loan agreements were enforceable. At no time did the FDIC inform Tri-State that it must present its claims to the FDIC under a formal administrative

---

[2]The FDIC was also appointed receiver for Metro North, which went into receivership on November 13, 1992.

review process.

On February 18, 1994, Tri-State filed a complaint in the Western District of Missouri against the FDIC, Merchants, Metro North, and several officers of the banks (the Tri-State lawsuit).  Tri-State sought three different forms of relief: (1) declaratory relief adjudicating the respective rights and obligations of the parties under the purchase agreements and loan documents; (2) rescission of the purchase agreements and loan documents; and (3) damages for breach of contract, breach of the duty of good faith, breach of fiduciary obligations, and fraud.

On July 13, 1994, the district court dismissed the FDIC, Merchants, and Metro North for lack of subject matter jurisdiction.  The court noted that under FIRREA, a claimant must exhaust the administrative review process before a court has jurisdiction to hear the claims.  12 U.S.C. § 1821(d)(6)(A), (d)(13)(D).  Because Tri-State did not present its claims to the FDIC for administrative review during the ninety-day period ending March 16, 1993, dismissal was appropriate.

On September 20, 1994, the FDIC filed suit in the Western District of Missouri, FDIC v. Knights Lodging, Inc. (the KLI lawsuit), against certain appellants, asserting a claim for failure to repay the debt obligations and alleging that appellants had fraudulently transferred funds to avoid paying the FDIC.

The district court consolidated the KLI lawsuit and the Tri-State lawsuit on September 23, 1994.  On October 18, 1994, the district court dismissed the remaining defendants in the original Tri-State lawsuit.[3]  On November 9, 1994, Tri-State appealed the

_____

[3]The KLI lawsuit, still pending before the district court, was later transferred to the Northern District of Ohio on December 12, 1994.

-4-

July 13 dismissal of the FDIC.[4]  It is this appeal that is presently before the Court.

## II.

The FDIC argues that this Court lacks jurisdiction to hear this appeal under 28 U.S.C. § 1291 because the July 13 order dismissing the FDIC as a defendant was not an appealable final order when appeal was taken on November 9.  The FDIC notes that the KLI lawsuit, which had been consolidated with the Tri-State lawsuit, was still pending before the district court when appeal was taken in the Tri-State lawsuit.  The FDIC contends that an open question in the consolidated suit still existed, precluding appeal in the absence of Rule 54(b) certification.

We disagree with the FDIC.  Only when "two actions [are] really consolidated and merged into one," Mendel v. Production Credit Ass'n of the Midlands, 862 F.2d 180, 182 (8th Cir. 1988), does the presence of an open question in one of the formerly separate suits preclude appeal on any issue in the consolidated suit.  Id.; see also Soo Line R.R. v. Escanaba & Lake Superior R.R., 840 F.2d 546, 548 (7th Cir. 1988).  However, when "technical consolidation into a single action [does] not occur, but rather [the consolidation is] an arrangement for joint proceedings and hearings, for convenience," Mendel, 862 F.2d at 182, then each suit retains its individual nature, and appeal in one suit is not precluded solely because the other suit is still pending before the district court.  Id.; see also Soo Line, 840 F.2d at 548.

---

[4]Because the individual defendants in the Tri-State lawsuit were not dismissed until October 18, the July 13 order dismissing the FDIC, Merchants, and Metro North was not a final order for purposes of 28 U.S.C. § 1291 appellate jurisdiction until October 18.  Therefore, this appeal is timely.  We note that Tri-State moved to have the July 13 order certified as final and appealable pursuant to Federal Rule of Civil Procedure 54(b), but this motion was denied by the district court on August 5, 1994.

Although the district court did not clearly state whether the two lawsuits were formally merged for all purposes, it appears that they were merged for the purposes of convenience only and were not formally merged.[5] While the district court grouped both suits under a single docket number, this grouping appears to have been only to "simplify the filing process." Order of Consolidation at 3 (reprinted in Appellee's Addendum at 8). Further, the district court referred to future filings "in these two suits," and it noted that consolidation "will best use scarce judicial resources" and was to "accommodate the convenience of the parties." Id.[6] Finally, in dismissing the remaining defendants in the Tri-State lawsuit on October 18, 1994, the district court stated that there was "still other related litigation pending with this same case number." Order of Dismissal at 1 n.1 (reprinted in Appellee's Addendum at 9) (emphasis added). That the district court termed the KLI lawsuit "related litigation" rather than "other matters in this case" indicates that the two lawsuits, while consolidated, were never merged for all purposes and they retained their individual identity.

Because the two lawsuits were merged for the sake of

---

[5]Our appellate consideration would be made considerably easier if the district court could regularly state on the record whether consolidated cases have been "formally merged, for all purposes," or whether the consolidation is "informal, for convenience only." Such a statement would provide a very useful bright line in this area. See, e.g., Ivanov-McPhee v. Washington Nat'l Ins. Co., 719 F.2d 927, 930 n.2 (7th Cir. 1983) (requesting that district courts state on the record whether consolidated cases have been merged "for all purposes").

[6]The district court did mention that both suits involve the determination of rights of the parties with regard to the same properties. Order of Consolidation at 2-3 (reprinted in Appellee's Addendum at 7-8). The FDIC argues that this language implies that the court intended to formally merge the two related litigations into one suit. However, we believe that the district court offered the fact of similarity between the cases merely as support for its consolidation for convenience.

-6-

convenience, the Tri-State lawsuit was immediately appealable on October 18, 1994, when the remaining defendants in that suit were dismissed. Accordingly, we have jurisdiction under 28 U.S.C. § 1291 to hear this appeal.

### III.

Under FIRREA, Congress established a comprehensive claims review process for claims against the assets of failed banks held by the FDIC as receiver. See 12 U.S.C. § 1821(d)(3)-(13). Claimants must initially submit their claims to the FDIC for review,[7] thus "enabl[ing] the FDIC to dispose of the bulk of claims against failed financial institutions expeditiously and fairly . . . without unduly burdening the District Courts." H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess., at 418-19, reprinted in 1989 U.S.C.C.A.N. 86, 215.

Judicial review of claims governed by FIRREA is contingent on the completion of this administrative review process. Section 1821(d)(13)(D) states that, except as otherwise provided, no court shall have jurisdiction over

> any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver . . . .

_____

[7]Under this review process, the FDIC must first publish a notice "to the depository institution's creditors" specifying a date by which claims must be presented for review, not less than 90 days after publication. 12 U.S.C. § 1821(d)(3)(B). In addition, the FDIC must mail a "similar" notice to "any creditor shown on the institution's books." 12 U.S.C. § 1821(d)(3)(C). The FDIC has 180 days after a claim is filed to allow or disallow it. 12 U.S.C. § 1821(d)(5)(A). Claims not timely filed must be disallowed unless "the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date"; in that case, a late-filed claim "may be considered by the receiver," provided the claim is "filed in time to permit payment." 12 U.S.C. § 1821(d)(5)(C).

The only exception is found in § 1821(d)(6)(A), which provides that courts have jurisdiction over claims that have first been presented to the FDIC under its administrative review process. Read together, these two provisions mandate that "administrative exhaustion is required before any court acquires subject matter jurisdiction over a claim" against the FDIC as receiver for a failed thrift. Bueford v. Resolution Trust Corp., 991 F.2d 481, 484 (8th Cir. 1993).

Tri-State did not submit its claims to the FDIC for formal review. Nevertheless, Tri-State argues that the jurisdictional bar is not applicable because (1) Tri-State's claims arose postreceivership, as a result of management decisions made by the FDIC, and so the claims are not covered by this section, and (2) this section applies only to creditors with monetary claims and not to debtors, especially those seeking declaratory and rescissory relief.

Further, Tri-State contends that if administrative review was required, the failure to undergo such review is excused because (1) the extensive prelitigation discussions and negotiations between Tri-State and the FDIC satisfies this requirement because the FDIC has undertaken the review process contemplated by 12 U.S.C. § 1821(d), and (2) the FDIC's failure to provide proper notice, and the FDIC's actions in affirmatively misleading Tri-State regarding the notice procedures, amounts to a waiver by the FDIC, estopping the FDIC from asserting the jurisdictional bar. None of these contentions has merit.

**A.**

Tri-State contends that the administrative review requirement does not apply to it because its claims against Merchants and the FDIC arose postreceivership, as a result of management decisions made by the FDIC. Tri-State concedes that the underlying breach of

-8-

contract and fraud that led to this lawsuit occurred before the FDIC took over as receiver.  However, Tri-State contends that its claims arose only after the FDIC, as receiver, refused to honor the refinancing agreements.

Tri-State relies on <u>Homeland Stores, Inc. v. Resolution Trust Corp.</u>, 17 F.3d 1269 (10th Cir.), <u>cert. denied</u>, 115 S. Ct. 317 (1994), which held that the jurisdictional bar of § 1821(d)(13)(D) does not apply to claims arising out of management actions of the Resolution Trust Corporation (RTC) after taking over a depository institution.[8]  In <u>Homeland Stores</u>, the RTC, as part of its receivership, took over management of Belmont Square shopping center.  Homeland Stores, a tenant in the shopping center, was guaranteed in its lease that the anchor tenant of the center would be of a specific character and would be "acceptable" to Homeland.  In selecting a new, impermissible anchor tenant, RTC breached this lease agreement with Homeland.  The court accepted jurisdiction, noting that when claims arise solely from RTC's management of the receivership asset and bear no relation to the failed institution for which the RTC was receiver, FIRREA does not apply.  <u>Id.</u> at 1275.  The court reasoned that such actions, because they could arise at any time after the RTC takes over as receiver (and possibly well after the claims bar date), were not susceptible to the standard administrative review provided for by FIRREA.

<u>Homeland Stores</u> does not apply to the situation presented in this case.  Although Tri-State, in an attempt to come under the <u>Homeland Stores</u> jurisdictional exception, asserts that it is solely

---

[8]We note that at least one other circuit has reached a conclusion contrary to <u>Homeland Stores</u>, holding that FIRREA's jurisdictional bar does encompass a claim arising from postreceivership actions of the RTC.  <u>See</u> <u>Rosa v. RTC</u>, 938 F.2d 383, 392 (3d Cir.), <u>cert. denied</u>, 502 U.S. 981 (1991).  Because these cases are distinguishable from the instant case, we need not here decide which of our sister circuits has correctly resolved this issue.

challenging the management decisions of the FDIC (that the FDIC, in managing the failed banks, did not remedy the breach of contract and fraud and did not honor the loan obligations), the genesis of its claim is the prereceivership misconduct by the failed banks. Unlike in <u>Homeland Stores</u>, in this case the actions taken by the FDIC as receiver cannot be separated from the underlying prereceivership misconduct by the failed banks.[9] Because Tri-State asserts prereceivership claims against the assets of Merchants, arising out of the misconduct of Merchants, Tri-State was required to submit its claims to the FDIC for administrative review.

**B.**

Tri-State next contends that the administrative review process is not applicable to it because this process only applies to creditors with claims against the assets of the failed institutions and not to debtors, especially those seeking declaratory and rescissory relief. We reject this contention.

The great weight of authority holds that FIRREA requires debtors as well as creditors to undergo the administrative review process. <u>See, e.g.</u>, <u>Freeman v. FDIC</u>, 56 F.3d 1394, 1401-02 (D.C. Cir. 1995) (noting that the jurisdictional bar applies to "all manner of 'claims' and 'actions seeking a determination of rights

---

[9]Permitting Tri-State to recharacterize its claims as such would, as appellees note, effectively eviscerate the claims process, because every plaintiff could (and would) simply challenge the FDIC's failure to reverse the failed bank's fraudulent actions rather than challenge the bank's fraudulent actions directly. Thus, in order to effectuate the stated congressional purpose in enacting FIRREA, namely "enabl[ing] the FDIC to dispose of the bulk of claims against failed financial institutions expeditiously and fairly," H.R. Rep. No. 101-54(I), at 418-19, <u>reprinted in</u> 1989 U.S.C.C.A.N. at 215, courts should look to the underlying substance of the challenged events. If plaintiff brings an action against the assets of the failed institution, then FIRREA's exhaustion requirement is applicable, regardless of how plaintiff styles its claim.

with respect to' the assets of failed banks, whether those claims and actions are by debtors, creditors, or others"); National Union Fire Ins. Co. v. City Sav., F.S.B., 28 F.3d 376, 389 (3d Cir. 1994) (noting that the bar against "any action" in § 1821(d)(13)(D) "includes actions by debtors as well as creditors"); Lloyd v. FDIC, 22 F.3d 335, 337 (1st Cir. 1994) (suit by debtor seeking equitable reformation or cancellation of mortgage agreement is a "determination of rights with respect to an asset" subject to the jurisdictional bar).

We reject Tri-State's contention that, because the notice provisions[10] of FIRREA apply only to creditors, § 1821(d)(13)(D)'s exhaustion requirement should be similarly limited to creditors bringing claims. While the notice provisions do apply only to creditors, such limiting language is conspicuously absent in the jurisdictional bar provision. Rather than mention creditors or limit its application to creditors, § 1821(d)(13)(D) bars "any claim or action for payment from, or any action seeking a determination of rights with respect to the failed institution's assets" (emphasis added), unless administrative remedies have been exhausted. Thus, "FIRREA's very text appears to contemplate claims beyond those by 'creditor[s] . . . on the . . . books' to whom statutory notice must be sent." Office & Professional Employees Int'l Union, Local 2 v. FDIC, 962 F.2d 63, 67 (D.C. Cir. 1992). We "assume Congress meant what it said when it included a jurisdictional bar to 'any action,'" National Union, 28 F.3d at 389, and thus we conclude that § 1821(d)(13)(D) was intended to

---

[10]For example, § 1821(d)(3)(B)(i) requires that the receiver publish "notice to the depository institution's creditors to present their claims," and § 1821(d)(3)(C) requires the receiver to "mail a notice . . . to any creditor shown on the institution's books . . . ."

apply to debtors as well as creditors.[11]  Therefore, Tri-State's damages action for fraud and the breaches of contract, duty of good faith, and fiduciary obligations is barred because Tri-State did not exhaust administrative remedies.

Tri-State's request for declaratory relief likewise does not render the exhaustion requirement inapplicable.  Section 1821(d)(13)(D) bars any action seeking a determination of rights with respect to the assets of any depository institution.  As noted by the Third Circuit,

> a declaratory judgment action _is_ an "action seeking a determination of rights." . . . No reasonable argument can be offered that the plain meaning of the "any action seeking a determination of rights" language of § 1821(d)(13)(D) does not include complaints requesting declaratory relief.

National Union, 28 F.3d at 385; see also id. at 385-92 (discussing, in depth, application of § 1821(d)(13)(D) to declaratory judgment actions).  Thus, declaratory judgment actions are covered by

---

[11]In so holding, we reject Tri-State's reliance on a line of bankruptcy cases holding that debtors are not covered by FIRREA. The Ninth Circuit, after reviewing FIRREA's legislative history, held that, in bankruptcy proceedings, "a 'claim' under FIRREA means an obligation owed _by_ the failed institution, and not an obligation owing _to_ it," and debtors are thus not covered by FIRREA.  In re Parker North Am. Corp., 24 F.3d 1145, 1153 (9th Cir. 1994) (quoting Scott v. RTC, 157 B.R. 297, 310-11 (Bankr. W.D. Tex. 1993) (withdrawn at request of the parties, 162 B.R. 1004 (Bankr. W.D. Tex. 1994))).

Although the construction placed upon § 1821(d)(13)(D) by the Parker court does not "quite square[] with the statutory text," Freeman, 56 F.3d at 1401, we have no need in this case to decide the applicability of FIRREA to bankruptcy cases.  Assuming arguendo that Parker was correctly decided, we decline to extend this approach to nonbankruptcy court contexts.  Such an extension to nonbankruptcy cases "would not advance the purposes of the Bankruptcy Code, while it would undercut Congress' core purpose in enacting FIRREA."  Id.

FIRREA.[12]

Plaintiff further requests that the court rescind the purchase agreements and loan documents. However, under FIRREA's anti-injunction provision, 12 U.S.C. § 1821(j), "[e]xcept as otherwise provided, no court may take any action . . . to restrain or affect that exercise of the powers or functions of the [FDIC] as a conservator or receiver." Because FIRREA grants the FDIC the power to "collect all obligations and money due the institution," 12 U.S.C. § 1821(d)(2)(B)(ii), rescinding the agreements would act as an impermissible restraint on the ability of the FDIC to exercise its powers as receiver. See Freeman, 56 F.3d at 1399 (§ 1821(j), which is "a sweeping ouster of courts' power to grant equitable remedies," prevents the courts from granting "nonmonetary remedies, including injunctive relief, declaratory relief, and rescission of [a] promissory note."); see also Ward v. Resolution Trust Corp., 996 F.2d 99, 104 (5th Cir. 1993) ("Like injunction, rescission is a 'judicial restraint' that is barred by 1821(j)."). This Court therefore lacks jurisdiction to grant the requested equitable relief.

Finally, we write to address one concern raised at oral argument: if we prevent Tri-State from obtaining declaratory and rescissory relief in this case, then Tri-State will be defenseless

---

[12]The National Union Court declined to decide whether declaratory judgment actions could be submitted for administrative review under § 1821(d)(6)(A). If not, then § 1821(d)(13)(D)'s inclusion of declaratory judgment actions is a jurisdictional bar rather than an exhaustion requirement. See National Union, 28 F.3d at 387 n.12. While we do not have occasion to decide this issue (Tri-State's failure to submit the issue for administrative review divests the court of subject matter jurisdiction in any event), we do note that the Third Circuit appears to have resolved this issue. In Hudson United Bank v. Chase Manhattan Bank of Conn., 43 F.3d 843, 849-50 (3d Cir. 1994), the court held that the administrative claims procedures and the jurisdictional bar have concurrent scope, which suggests that declaratory judgment actions could be raised in the administrative forum.

-13-

in the KLI lawsuit if the FDIC attempts to enforce the loan agreements. This is not true.  In National Union, supra, the Third Circuit held that, while petitioner was barred from offensively bringing a declaratory judgment action or suit for rescissory relief, it could still raise any affirmative defenses it had against the RTC in any suit by the RTC to enforce the loan obligations.  National Union, 28 F.3d at 392-395;[13] see also RTC v. Midwest Fed. Sav. Bank, 36 F.3d 785, 792 (9th Cir. 1993) (§ 1821(d)(13)(D) applies to "claims" and "actions" and not to "defenses"). We agree with the Third and Ninth Circuits that true affirmative defenses may still be asserted by Tri-State in the KLI lawsuit.

### C.

Tri-State next argues that, even if the exhaustion requirement is applicable, the extensive discussions and negotiations between Tri-State and the FDIC regarding the financing and debt agreements at issue satisfies this requirement because the FDIC has undertaken the review process contemplated by 12 U.S.C. § 1821(d).  Tri-State relies on Praxis Properties v. Colonial Sav. Bank, 947 F.2d 49, 64

---

[13]In support of this proposition, the Third Circuit noted that § 1821(d)(13)(D) bars "any claims" seeking payment or "any action seeking a determination of rights"; thus, affirmative defenses, which technically are "responses" and not "claims" or "actions," are not covered by FIRREA and need not first be submitted for administrative review.  National Union, 28 F.3d at 393.

Further, this interpretation finds support in the policies undergirding FIRREA.  In barring declaratory judgment actions, "Congress apparently . . . determined that the societal benefits resulting from the right to bring . . . declaratory judgment actions, are outweighed by the societal benefits resulting from the RTC being able to avoid costly and perhaps unnecessary litigation."  Id. at 388.  However, when the FDIC has completed its administrative review, and has chosen a judicial forum in which to prosecute its rights, the policy of avoiding unnecessary litigation is no longer applicable, and the party's Due Process rights to defend the claims in the FDIC's lawsuit become paramount.  Id. at 394.

(3d Cir. 1991), which allowed prolonged negotiations between the parties to substitute for formal review and thus provide the court with jurisdiction.

Praxis is distinguishable from the present case. Praxis arose during the nascent stages of FIRREA. FIRREA was enacted on August 9, 1989, and when the RTC was appointed receiver in that case on November 9, 1989, it "lacked a fully developed, standardized claims process." Id. Praxis informally presented its claims to the RTC and engaged in extensive discussions with the RTC. Given the RTC's lack of standardized procedures, the court determined that "under the circumstances Praxis did all it could do to exhaust its administrative remedies." Id.

However, the Praxis court intimated that, had the case arose when the RTC had such standardized procedures in place, the informal negotiations would not have been sufficient to provide the court with jurisdiction. Id. ("We do not mean to imply, however, that under today's regime [of formalized claims procedures], a mere breakdown of negotiations between RTC and a claimant would entitle the claimant to proceed in court."). Of course, the claims in the present case arose several years after the enactment of FIRREA, at a time when the FDIC had formalized procedures for claims review. Tri-State cannot rely on Praxis to excuse its failure to formally present its claims to the FDIC.

Further, the plaintiff in Praxis presented its claims informally to the RTC during the ninety-day presentation period mandated by FIRREA. In the present case, while Tri-State mailed a letter to the FDIC in December 1992 apprising them of the existence of the claims, negotiations did not begin until August 1993, several months after the expiration of the claims presentation period, which ended on March 16, 1993, for Merchants. Therefore, even if informal negotiations could satisfy the exhaustion requirement--a proposition we reject--such informal negotiations in

this case were untimely.

**D.**

Tri-State's final argument is that the FDIC's failure to provide proper notice, and the FDIC's actions in affirmatively misleading Tri-State regarding the notice procedures, amounts to a waiver by the FDIC, estopping the FDIC from asserting the jurisdictional bar. This contention is without merit, for several reasons.

First, the mailed-notice provisions under § 1821(d)(3)(B)-(C) do not apply to Tri-State. These provisions provide that the FDIC must publish written notice (which it did) and also mail notice to all creditors listed on the books of the failed bank. Because Tri-State is not a creditor, and is not listed on the books of Merchants as a creditor, it was not entitled to receive notice by mail.

Second, even supposing that the notice provisions applied to Tri-State, this Circuit has expressly held that receivers under FIRREA cannot be estopped from asserting the jurisdictional bar. In Bueford, this Court stated:

> Lack of subject matter jurisdiction, unlike many other objections to the jurisdiction of a particular court, cannot be waived. . . . FIRREA contains an exhaustion requirement as a pre-requisite for suit in any court, and the statute contains no waiver provision. Therefore, the RTC cannot, by its own conduct or otherwise, be estopped from raising the issue of subject matter jurisdiction.

Bueford, 991 F.2d at 485 (citation omitted). Thus, the FDIC's failure to provide proper notice "does not relieve the claimant of the obligation to exhaust administrative remedies, because the statute does not provide for a waiver or exception under those

-16-

circumstances." <u>Freeman</u>, 56 F.3d at 1402 (citing <u>Meliezer v. RTC</u>, 952 F.2d 879, 882-83 (5th Cir. 1992)); <u>see also</u> <u>Intercontinental Travel Mktg. v. FDIC</u>, 45 F.3d 1278, 1284-85 (9th Cir. 1994) (FDIC's failure to mail notice does not exempt claimant from administrative review requirement).  The only exception to the strict requirement of exhaustion of remedies, where the claimant does not receive notice of the appointment of the receiver in time to file his claim, <u>see</u> 12 U.S.C. § 1821(d)(5)(C), is inapplicable here because Tri-State had actual knowledge of the receivership.

Finally, the FDIC did not affirmatively mislead Tri-State into foregoing the required administrative review.  Although under <u>Bueford</u> we question whether the FDIC's affirmative misconduct could estop it from asserting jurisdictional bar,[14] we need not decide this issue today because in this case the FDIC did not affirmatively mislead Tri-State into believing that the claims review process did not apply to it.

The FDIC stated that it would not mail notice to Tri-State because it did not consider Tri-State to be a creditor or claimant.  However, the FDIC never mentioned that it believed that the jurisdictional bar, a completely separate and independent subsection of FIRREA, did not apply to Tri-State.  Tri-State may have misinterpreted the FDIC's statement that the notice provisions were not applicable to mean that administrative exhaustion was not required. However, this error by Tri-State does not amount to evidence that the FDIC affirmatively misled Tri-State.

---

[14]<u>Bueford</u>'s language that "the RTC cannot, by its own conduct or otherwise, be estopped from raising the issue of subject matter jurisdiction," 991 F.2d at 485, seems to support the proposition that the FDIC's affirmative misconduct is irrelevant, although <u>Bueford</u> was not an affirmative misconduct case.  One court has intimated that the FDIC's affirmative misconduct could, in appropriate circumstances, toll the ninety-day bar date.  <u>See</u> <u>Intercontinental</u>, 45 F.3d at 1285.

**V.**


The district court's order of July 13, 1994 dismissing the FDIC for lack of subject matter jurisdiction became final on October 18, 1994, and we have jurisdiction to hear this appeal under 28 U.S.C. § 1291.  Because Tri-State failed to exhaust the mandatory administrative remedies before filing suit, the district court's order is affirmed.


A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.