UNITED STATES of America, Plaintiff,

v.

Sharonda WHITE, Defendant.

No. CR S–97–172 GEB.

United States District Court,
E.D. California.

Oct. 15, 1998.

Jodi Beth Rafkin, Assistant U.S. Attorney, for Plaintiff.

Jeffrey L. Staniels and Mary French, Assistant Federal Defenders, for Defendant.

**AMENDED ORDER**

BURRELL, District Judge.

The government moves under the Court's inherent authority to compel Defendant Sharonda White to submit to a mental examination by a government expert, arguing that it needs its own forensic psychiatric examination to effectively rebut White's mental status defense.[1] White opposes the motion on two grounds. First, she argues that the government "has previously conducted extensive mental examinations of [her], and [she] has disclosed mental health information to the government, including mental health records and reports...." Def.'s Opp'n filed September 18, 1998, at 1, 2. Second, White argues that a court-ordered examination concerning an element of the crime "which the government bears the burden of proving" would violate the Fifth Amendment. For the reasons stated below, ·the motion is granted under the Court's supervisory power.[2]

I.

**ANALYSIS**

 " 'Guided by considerations of justice' and in the exercise of supervisory powers federal courts may, within limits, formu-

1. White gave notice to the government pursuant to Federal Rule of Criminal Procedure 12.2(b), which states: "If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of guilt, the defendant shall ... notify the attorney for the government ...." Fed.R.Crim.P. 12.2(b). A conflict exists among federal courts over whether Rule 12.2(c) provides authority for a court-ordered mental examination upon a defendant's notice of intent to introduce expert testimony relating to a mental disease or defect under Rule 12.2(b). *See, e.g., United States v. Davis*, 93 F.3d 1286, 1293–95 (6th Cir.1996) (finding that Rule 12.2(c) does not authorize the district court to order a mental examination of a defendant who provided notice under Rule 12.2(b) rather than 12.2(a)); *United States v. Lewis*, 53 F.3d 29, 35–36 n. 9 (4th Cir.1995) (stating that a mental exam may be ordered under Rule 12.2(c) pursuant to notice under Rule 12.2(b)). Although the government brings this motion under the Court's inherent authority to avoid this conflict, resorting to inherent authority is inappropriate where the issue can be decided under a specific statute or

rule. However, nothing in Rule 12.2(c), which authorizes examinations in appropriate cases under 18 U.S.C. § 4241 (concerning a criminal defendant's mental competency to participate in criminal proceedings) and 18 U.S.C. § 4242 (concerning the defense of insanity), provides such authority.

2. The government's motion is deemed to request relief under the Court's "supervisory powers." Although the term "inherent authority" is used to describe the power of the federal courts to exercise authority in civil matters and sometimes in criminal matters, the Seventh Circuit opines that this authority is more specifically denominated "supervisory power" in the criminal context. *See Soo Line R. Co. v. Escanaba & Lake Superior R. Co.*, 840 F.2d 546, 551 (7th Cir.1988) (likening "inherent authority" in a civil context to "its cousin in criminal law the 'supervisory power' "). Because both "inherent authority" and "supervisory power" refer to "the power of courts to make common law when statutes and rules do not address a particular topic," the terms are used interchangeably herein. *Id.*

late procedural rules not specifically required by the Constitution or the Congress." *United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (quoting *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943)). This supervisory power is prescribed for district courts in Rule 57(b),[3] which provides in pertinent part: "A judge may regulate practice in any manner consistent with federal law, [the Rules of Criminal Procedure], and local rules of the district." Since nothing in Rule 12.2 or its legislative history supplants the Court's supervisory power to order a psychiatric examination, that extant power may be utilized. *See United States v. Hicks,* 103 F.3d 837, 840–41 (9th Cir.1996); *United States v. Richter,* 488 F.2d 170, 173–74 (9th Cir.1973).

The Supreme Court has admonished, however, that "[p]rinciples of deference counsel restraint in resorting to inherent power and require its use to be a reasonable response to the problems and needs that provoke it." *Degen v. United States,* 517 U.S. 820, 823–24, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996) (citations omitted). White contends that use of the Court's power to order a mental examination would be unreasonable because the government already possesses medical information on her condition. The government counters that the medical information White references consists of "clinical [and] treatment evaluations" which are distinct from a forensic mental exam conducted specifically on the issue of White's mental capacity at the time of the offense.[4]

It is uncontroverted that White's expert, Dr. Mills, conducted a recent forensic psychiatric examination in which he addressed whether White was "suffering from a significant mental disorder at the time she committed the offense." [5] Upholding White's refusal to submit to a forensic psychiatric examination by the government would allow White full use of her own expert's forensic psychiatric findings to develop her diminished capacity defense and deprive the government of the corresponding type and quality of information for its rebuttal. As a plurality of the District of Columbia Circuit once noted, "Ordinarily the only effective rebuttal of psychiatric opinion testimony is contradictory opinion testimony; and for that purpose ... '[t]he basic tool of psychiatric study remains the personal interview, which requires rapport between the interviewer and the subject.' " *United States v. Byers,* 740 F.2d 1104, 1114 (D.C.Cir.1984) (en banc) (plurality opinion) (quoting *Rollerson v. United States,* 343 F.2d 269, 274 (D.C.Cir. 1964)). Accordingly, use of the Court's supervisory power to compel a mental examination is reasonable in this case.

White also argues that compelling an examination would violate her Fifth Amendment privilege against self-incrimination. A defendant's "Fifth Amendment right looms

---

**3.** All references to rules are to the Federal Rules of Criminal Procedure.

**4.** The offense at issue occurred in Japan, where White and the two-year-old child she is alleged to have murdered were dependent military personnel. During investigation of the offense, White was examined by a Japanese psychiatrist, Dr. Kazuyoshi Yamamoto, and placed in custody of Japanese authorities. She was subsequently released from Japanese custody and hospitalized for treatment in the Mental Health Unit at David Grant Medical Center, located on Travis Air Force Base in California. Although the government recognizes that White was examined by Dr. Yamamoto for the purpose of determining whether Japanese officials should prosecute her under Japanese law, it asserts that "we do not know what Japanese legal standards Dr. Yamamoto was operating under." Reply to Opp'n at 2. The government contends that the examination conducted by Dr. Yamamoto was the only arguably forensic examination conducted until that conducted by White's own expert, Dr. Mark J. Mills. These contentions have not been controverted, either in papers or at oral argument.

**5.** A forensic psychiatric examination focuses on the mind in relation to legal principles and cases. *See* Black's Law Dictionary 649 (6th ed.1990) (defining "forensic psychiatry"). White argued at oral argument that Dr. Mills saw her "primarily" to determine her future dangerousness. This assertion, however, does not controvert evidence illuminated by the government which evinces that "Dr. Mills has formed the opinion that the defendant 'suffers from a major mental disorder, schizophrenia, and that she suffered from schizophrenia . at the time of the offense, and that schizophrenia caused or significantly contributed to the offense.' "

as soon as the court, on its own motion or the prosecutor's, orders the defendant to submit to the examination." *United States v. Malcolm,* 475 F.2d, 420, 425 (9th Cir.1973). However, virtually all circuits addressing this issue in cases where a defendant has interposed the defense of insanity have uniformly held that a court-ordered psychiatric examination does not violate the Fifth Amendment's privilege against self-incrimination. *See Byers,* 740 F.2d at 1111; *United States v. Handy,* 454 F.2d 885, 888–89 (9th Cir.1971); *United States v. Albright,* 388 F.2d 719, 724–25 (4th Cir.1968); *Pope v. United States,* 372 F.2d 710, 720 (8th Cir.1967) (en banc), *vacated on other grounds,* 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968). The overarching rationale of these decisions is one of "fundamental fairness" and "judicial common sense." *See Byers,* 740 F.2d at 1111–13 (analyzing various justifications advanced by the courts). As then-judge Scalia explained for the plurality in *Byers,* these courts "have denied the Fifth Amendment claim primarily because of the unreasonable and debilitating effect it would have upon society's conduct of a fair inquiry into the defendant's culpability." *Id.* 740 F.2d at 1113. A defendant asserting the defense of insanity could otherwise use the Fifth Amendment as a bar to deny the government "the opportunity to have its own corresponding and verifying examination, a step which perhaps is the most trustworthy means of attempting to meet [its burden of proof]." *Id.* (quoting *Pope,* 372 F.2d at 720).

The same reasoning applies to White's Fifth Amendment claim. White has pointed to her mental capacity at the time of the offense as the reason why she should not be found guilty of murder, and she intends to introduce psychiatric testimony for that purpose. The Fifth Amendment does not bar the government's ability to access the same type of evidence, and a fair and effective criminal process requires that the government "be able to follow where [the defendant] has led." *Id.*

The fact that White's mental state is an element of the crime which the government must prove does not alter this conclusion. As the Ninth Circuit has recognized, to find otherwise would elevate form over substance. *See United States v. Halbert,* 712 F.2d 388, 390 (1983). Diminished capacity may not technically be an insanity defense, but both defenses focus on a defendant's mental capacity. *Id.* The insanity defense "operates to completely excuse the defendant whether or not guilt can be proven," while the diminished capacity defense "is directly concerned with whether the defendant possessed the ability to attain the culpable state of mind which defines the crime." *United States v. Twine,* 853 F.2d 676, 678 (9th Cir.1988). Both defenses thus hinge on the workings of a defendant's mind at the time of the offense. No principled reason exists to allow psychiatric probing of these workings when insanity is at issue but to disallow it on the issue of diminished capacity. *See Halbert,* 712 F.2d at 390.

Nor will White's Fifth Amendment privilege be violated by the government's use of its own psychiatric testimony at trial when that testimony is used solely to rebut White's presentation of evidence on the mental status issue. Use of such evidence will be controlled by Rule 12.2(c). *See United States v. Richter,* 488 F.2d 170, 173–74 (9th Cir.1973) (recognizing that when establishing limitations on the court's inherent authority, the Rule under which that authority is exercised should be looked to for guidance). Rule 12.2(c), which prescribes use of forensic mental exam evidence at trial, was amended in 1983 to reflect Fifth Amendment concerns raised by the Supreme Court in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); it now states in pertinent part:

> No statement made by the defendant in the course of any examination provided for by this rule, whether the examination be with or without the consent of the defendant, no testimony by the expert based upon such statement, and no other fruits of the statement shall be admitted in evidence against the defendant in any criminal proceeding except on an issue respecting mental condition on which the defendant has introduced testimony.

*See* Fed.R.Crim.P. 12.2(c) advisory committee's notes, 1983 Amendment. Cases construing Rule 12.2(c) make plain that use of a defendant's statement made during a court-ordered forensic mental exam to rebut testimony tendered to prove an insanity defense does not violate the Fifth Amendment. *See United States v. Madrid,* 673 F.2d 1114, 1120 (10th Cir.1982); *United States v. Leonard,* 609 F.2d 1163, 1165 n. 3 (5th Cir.1980). Moreover, the Ninth Circuit has upheld use of such evidence to rebut defense testimony on the issue of diminished capacity. *See Halbert,* 712 F.2d at 390 ("After raising the issue of mental capacity, Halbert cannot complain that [the government's doctor] used his statements against him"); *see also United States v. Kessi,* 868 F.2d 1097, 1107–08 (9th Cir.1989) (indicating the appropriateness of using mental exam evidence where defendant argued that post-traumatic stress disorder prevented him from forming the requisite intent to commit the crimes for which he was charged). Use of the court-ordered mental examination in the present case shall also be constrained to rebuttal evidence; thus White's Fifth Amendment privilege will not be violated.

Accordingly, for the stated reasons, the government's request for a compelled mental examination is granted. The government shall inform defense counsel of the time and place of the examination.[6] To ensure that this examination is consistent with existing procedures governing similar examinations, the procedures of Rule 12.2 are adopted; Rule 12.2(c) will govern the use of information gathered during the court-ordered psychiatric examination and Rule 12.2(d) shall govern any failure to comply with this Order.

IT IS SO ORDERED.

---

6. The parties stated during the hearing on this motion that they would try to agree on the issues involved in the examination.